CARROLL, CHAS., Chief Judge.
The petitioner Jack R. Bell, by certio-rari, challenges an order of the Florida Industrial Commission which vacated the deputy’s order awarding compensation.
Petitioner Bell, while employed as a telephone lineman, suffered an injury by accident arising out of and in the course of his employment. The deputy commissioner found that as a result of his injury the claimant was no longer able to perform the physical actions necessary in the work of a lineman, which involved climbing telephone poles and stringing wire. He was able to perform labor of a less exacting physical character, and at the time of the hearing was earning more with the company in another position than his wages at the time of the accident. This more remunerative employment had resulted from a promotion received after taking examinations which he was privileged to do because of certain seniority with the telephone company.
The deputy commissioner, applying the test which he stated as “What is his ability to compete in the open labor market for the remainder of his life?”, held that subsequent to the date of maximum medical recovery the claimant had “permanent partial disability of 20% loss of future earning capacity”, and made provision for an award on that basis.
On review, the full commission vacated and set aside the deputy’s order, with one commissioner dissenting. The majority held that “the facts indicate that there has been no diminution in earning capacity.”
Here petitioner had suffered a non-scheduled injury, as covered by § 440.-15(3) (u), Fla.Stat, F.S.A. of the Workmen’s Compensation Law. That subsection, read with § 440.02(9), defining “disability”, specifies diminution of earning capacity as the basis for compensation. Thus in Ball v. Mann, Fla.1954, 75 So.2d 758, 759-760, the Supreme Court said:
“The compensation for permanent partial disability is prescribed in Section 440.-15(3), F.S.1951, F.S.A. Injuries specifically scheduled in this section are to be compensated by payment of sixty per cent of the employee’s average weekly wage for the number of weeks specifically set forth for each described type of injury. Injuries not scheduled, such as the one here involved, are described as ‘other cases’; and for these compensation in the amount of sixty per cent of the employee’s average weekly wage is to be paid ‘for such number of weeks as the injured employee’s percentage of disability is of three hundred fifty weeks.’ Section 440.15(3) (u).
“The last quoted sub-paragraph must be read in pari materia with Section 440.02 (9), F.S.1951, F.S.A., which defines the word ‘disability’ as used in the Workmen’s Compensation Law to mean ‘incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.’ Upon alignment of this definition of disability along with the quoted language of Section 440.15(3) (u), supra, it is clear that the word ‘disability’ as there used refers to diminution of capacity to earn resulting from a physical impairment caused by the injury to the body and not merely to the physical impairment itself. These two concepts are distinctly different; and under our Workmen’s Compensation Law, compensation is limited in these ‘other cases’ to compensation for diminution of earning capacity. See Rosier v. Roofing & Sheet Metal Supply Co., Fla., 1949, 41 So.2d 308.”
The Ball case rejected functional disability alone as the basis for an award allowable under the statute only for diminution of earning capacity.
In Marsiglia v. Eastern Air Lines, Inc., 1 Fla.Comp.Rep. 77 at page 79 (certiorari denied Fla., 85 So.2d 762), the commission said :
“Presumptively, a functional disability, will, sooner or later, result in a loss of earning capacity. In the absence of sufficient rebutting evidence, the claimant’s *485 percentage of functional loss will be presumed to be the percentage of loss of claimant’s earning capacity. It is open to the claimant to present evidence that the claimant’s power to earn has been impaired to an extent greater than his functional disability. Similarly, it is open to the carrier to show that claimant’s earning capacity loss is less than the functional percentage. Nature of the injury, nature of the type of work engaged in, are factors to be considered. * * * ”
In the present case, the deputy commissioner’s finding of diminution of earning capacity on which he predicated the award, was in turn based on certain sufficient findings of fact by the deputy commissioner which were supported by competent substantial evidence. However, it is contended by respondents that the claimant’s increase in earnings with the company counterbalanced the other facts found by the deputy bearing on diminution of earning capacity, and required a contrary ultimate finding by the deputy on that point.
Where other facts are present to support a finding of a measure of loss of earning capacity, an increase in wages of the claimant will not necessarily deprive him of the benefit of a finding of diminution of earning capacity. This is so because his earning capacity, in the sense of ability to compete in the open labor market, may be affected by other material and important factors which would control his earning level if and when required to seek other employment. 2 Larson, Workmen’s Compensation Law, §§ 57.21 and 57.31-35; 58 Am.Jur., Workmen’s Compensation, § 285.
We conclude, as did dissenting commissioner Lightsey, that the deputy commissioner was correct in his award to the claimant; that his findings were correct under the law and supported by competent substantial evidence and should not have been vacated by the commission; and we approve the reasoning and conclusions of the dissenting commissioner which appeared in his opinion as follows:
“I am in agreement with the Deputy Commissioner that the test to be used is, ‘what is the injured employee’s ability to compete in the open labor market for the remainder of his life.’ If we apply this test in the instant cause we find that the record contains ample evidence showing that the employee would be greatly handicapped in obtaining employment in the open labor market. It cannot and should not be presumed that the employer will continue to employ the claimant in his present capacity. The record reveals that the claimant cannot lift or pull in the same manner that he did prior to the injury and, in fact, the evidence indicates that generally the other employees are tolerant of his inability to perform certain duties and assist him in the performance of these duties.
“The majority of the Commission cites Mims v. City of Winter Garden, Decision No. 2-441, as authority for their holding in the instant cause in reversing the Deputy Commissioner. I must disagree that the facts in the Mims case are applicable in the instant case. * * * ”
“It is my further opinion the test to use is whether the claimant can perform, subsequent to the injury, the work he was engaged in at the time of the injury. It is not controverted by this record that claimant cannot perform his job as a lineman. As it was pointed out in Marsiglia v. Eastern Air Lines, Inc., wages being earned should not be the sole criterion of a claimant’s diminution in earning capacity.
“In view of the work history and educational background of Beil, it is hardly consistent with good logic to assume that claimant has suffered no diminution of earning capacity, particularly in view of the type employment in which he was engaged at the time of the accident and in which he is now engaged. Suffice it to say that a different situation would exist where the injured employee was an office worker or a professional man, and his employment involved no physical effort. For the claimant, however, to obtain work as an installer- *486 repairman on the open labor market would certainly subject him to some restrictions, particularly, if he had to compete with other applicants, the other applicants possessing equal experience and ability, but who do not have the physical impairments of the claimant.”
It follows that certiorari is granted, the order of the full commission quashed, and the order of the deputy commissioner reinstated.
It is so ordered.
HORTON and PEARSON, JJ., concur.