O’CONNELL, Justice.
This case appears now before this Court for the third time. The facts can be found elsewhere, Bell v. Southern Bell Telephone & Telegraph Co., 108 So.2d 483 (3d D.C.A.Fla.1959); Southern Bell Telephone & Telegraph Co. v. Bell, 116 So.2d 617 (Fla.1959), however, in view of the importance of the rules of law to be discussed herein, it would be beneficial to review the facts and the history of the proceedings.
The respondent, Jack R. Bell, while employed as a lineman, sustained a compensa-ble back injury when he fell from a tele--phone pole October 11, 1952. He was out of work from the date of the accident to January 13, 1953, during which time the petitioner furnished medical treatment and temporary compensation benefits.
Upon his return to work, he resumed the same job, but with lighter duties. On April 21, 1954, Bell reinjured his back. Surgery was performed, after which he returned to work in December 1954.
Approximately eight months after his re-return to work, Bell bid for a company job •of PBX installer-repairman. There were seventeen applicants for this job; Bell and four others were accepted. He has continued in this employment up to the present time. He is now earning a base salary of $117.00 per week as compared with a salary •of $81.50 per week at the time of his injury.
The petitioner furnished Bell with medi•cal treatment and temporary compensation ■benefits until June 11, 1957, approximately the time at which Bell was deemed to have reached maximum medical improvement. In that same year, Bell filed a claim seeking permanent partial disability benefits based on the back injury and a urinary difficulty that had developed as an incident to the back injury.
The Deputy Commissioner found that Bell, as a result of his accident, had a 20% permanent partial disability of the body, and an award of that amount was made. The Full Commission reversed the Deputy’s order, and an appeal was taken to the District Court of Appeal, Third District. The District Court reversed the decision of the Full Commission and reinstated the Deputy’s order. 108 So.2d 483.
From that opinion, the employer petitioned this Court for writ of certiorari. The writ was issued, and the decision of the District Court was reversed with directions that the cause be remanded to the Deputy Commissioner for further proceedings. 116 So.2d 617.
Upon further hearings before a new Deputy Commissioner, an award of 21% permanent partial disability was made. Both parties sought review by the Full Commission. The Commission quashed the Deputy’s order and remanded the cause to him to make a finding as to what the reasonable expectations of the employee’s continued employment were.
The employee then applied for certiorari to this Court and we quashed the order of the Full Commission and remanded for consideration on the merits. 152 So.2d 473. The Full Commission, after denying Southern Bell’s application for oral argument, entered a short form order of affirmance of the Deputy Commissioner’s findings.
Now, petitioner Southern Bell brings this cause once again before this Court alleging that the Deputy’s order, as affirmed, is not supported by competent substantial evidence in accord with reason and logic, and departs from the essential requirements of the law. All must agree that it is time that *846 this controversy be finally settled, and so we turn to that task.
In the instant cause, we have before us the same evidence and the same order of the Deputy as were before us when we rendered our second opinion. 152 So.2d 473. The only addition to the record is the short form order of affirmance entered by the Full Commission after remand.
As we observed in our second opinion, the deputy, in his order awarding the claimant 21% permanent partial disability, indicated that he had considered all the variables and factors required by Ball v. Mann, 75 So.2d 758 (Fla.1954) and our opinion at 116 So.2d 617. Thus, the only question for determination by us, in the instant proceeding, is whether there is competent substantial evidence to support a finding that the claimant has suffered a 21% diminution in his ability to earn, in the same or any other employment, the wages he was earning at the time of his injuries.
As stated earlier, the claimant, at the time of the last hearing before the Deputy, was earning $117.00 per week, whereas at the time of his injury he was earning only $81.50 per week. He works for the same employer, but in a more skilled and better paid job.
The Deputy Commissioner considered the increased earnings of the claimant, but found that claimant’s employment was “sheltered” in nature, and therefore not representative of his wage earning capacity. Evidence of earnings in employment that is in fact “sheltered” is of little probative value in the determination of earning capacity loss. See Nuce v. City of Miami Beach, 140 So.2d 303 (Fla.1962). That is to say, earnings in “sheltered” employment do not accurately reflect the ability of a claimant to “compete in the open labor market.” (We use “compete in the open labor market” in the sense discussed in our first opinion at 116 So.2d 617.)
Therefore, if the evidence supports the Deputy’s finding that the claimant’s employment is in fact “sheltered,” and the wages paid him are not representative of his earning capacity in his employment, we must deny certiorari. However, if the evidence does not support this finding, and if the other factors that must be considered under the mandate of Ball v. Mann, supra, do not require a contrary holding, we will be required, on the issues here presented, to grant certiorari and quash the order of the Full Commission.
Our examination of this record reveals that the Deputy’s finding of “sheltered” employment is not supported by competent substantial evidence that accords with logic and reason. On the contrary, it shows that the claimant is not shown any favoritism or charity by his supervisors; and his efficiency rating is above average. Claimant testified that he had no difficulty performing his work. His basic complaint is that “every once in a while” he has an involuntary discharge of urine that is embarrassing to him. When this occurs at a time when he receives a call to go into the teletype room in which operators work at the PBX machines, he stated that he asks a fellow employee to answer the call so as to avoid his embarrassment and he performs other duties out of sight of the operators. The evidence does not reveal how often this occurs. It is significant to note, however, that, on the shift worked by claimant, he is the only PBX repairman on duty seven nights out of ten.
As noted above, the claimant obtained his present position in competition with others, and has performed satisfactorily the job requirements of the position for a period of several years. This is not a case where an injured employee is given lighter duties for the same or greater pay by a charitable employer. There is nothing to indicate that the wages paid to claimant are not being fully earned by him, or that he is not reasonably secure in his job.
All this leads to the inescapable conclusion that the Deputy’s finding of “sheltered” employment is not supported by *847 competent substantial evidence that accords with logic and reason. It follows that claimant’s earnings in this employment must be entitled to full probative value on the issue of wage earning capacity.
Consideration of the other factors and variables, in this case, does not weaken the effect of claimant’s earnings in demonstrating his wage earning capacity or ability to compete in the open labor market.
In summary, we have before us an injured employee who, in competition with others and unaided by any special consideration because of his disability, secured a more skilled and better paid position. The new position demands less exertion, but greater knowledge and skill. This matter of greater knowledge and skill is of major significance, for it offers valuable experience in a new type employment in which the claimant has demonstrated for several years that he can compete.
The evidence further shows that, despite the 20% functional impairment, claimant’s physical condition is good; he has no complaints of pain or discomfort except the occasional embarrassment caused by the urinary malfunction; he is able to lift teletype machines weighing fifty to sixty pounds; he is able to participate in strenuous sports such as skin diving and bowling. His age, thirty-nine, and his education, high school, indicate a basis for, and time for, retraining in other fields of work should the occasion demand. His industrial history of excellent job stability is an important consideration; apparently he possesses “social competence,” the technical term used, which is a most important consideration by those who employ others.
Consideration of all these factors, including the wages presently being earned, demonstrates that, although claimant has suffered a physical injury and an anatomical disability, he has not, based on the facts available and reasonable inferences to be drawn therefrom, suffered any loss of wage earning capacity measured by the terms of the statute. Section 440.02(9), F.S.A. As in all such cases, we must continually remind ourselves that workmen’s compensation is not designed to compensate for personal injuries, but only for loss of wage earning capacity.
It may seem that we have accorded greater weight to claimant’s present earnings than to the other variables and factors considered. While our decisions require that all factors be considered, we have never suggested that they are invariably, or ever, to be given equal weight. On the contrary, the influence and force of each of the factors will always depend on the particular circumstances of each case. Some factors having little or no influence in one case, may be of substantial importance in another. It is obvious that, in any case, when the claimant has-a post-injury record of earnings in non-sheltered employment, these earnings will always be a factor of great weight.
To uphold the Deputy’s order in this case, we would, in effect, have to accept the presumption that functional disability will ultimately result in equal, or substantially equal, loss of earning capacity; a presumption that we rejected in our first opinion. 116 So.2d 617.
As we said in our opinion at 1S2 So.2d 473, 474:
“ * * * assessment of loss of earning capacity must always be a prediction about the indefinite future. Yet this prediction must be based on facts, and reasonable inferences from proven facts, as they exist at the time the prediction, i. e. the award, is made.” (Emphasis added.)
The facts and reasonable inferences that can be drawn therefrom lead conclusively to the finding that the claimant has suffered no loss of wage earning capacity.
It is interesting to note that the result of this decision is the same as the holding of the Full Commission in its order entered on the first appearance of this cause *848 before that body. In that order, the Commission found, as we do, that the claimant suffered no loss of earning capacity.
For the reasons above expressed, the petition for writ of certiorari is granted and the order of the Full Commission is quashed and the cause remanded with directions that the claim be denied.
It is so ordered.
THOMAS, Acting C. J., CALDWELL and HOBSON (Retired), JJ., and CARROLL, District Court Judge, concur.